IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHOMARI STATEN, §
§
Plaintiff, §
§
V. §                         No. 3:19-cv-843-L-BN
§
CITY OF DALLAS, ET AL., §
§
Defendant. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Shomari Staten, through counsel, brings this action, alleging, through

an amended complaint [Dkt. No. 4], constitutional and state-law violations, against the

City of Dallas, the Dallas Police Department ("DPD"), and multiple Dallas police

officers. United States District Judge Sam A. Lindsay referred Staten's action to the

undersigned United States magistrate judge for pretrial management under 28 U.S.C.

§ 636(b). *See* Dkt. No. 5.

The City, DPD, and Officers Bryan Roden, Jerry Thompson, Boz Rojas, Dan

Collins, Ed Anaya, Greg Fregeau, and Jerri Rowe (the "Officer Defendants") moved to

dismiss Staten's claims against them under Federal Rule of Civil Procedure 12(b)(6).

*See* Dkt. Nos. 6, 7, & 8. Staten responded to the motions to dismiss. *See* Dkt. Nos. 11,

12, & 13. And Defendants filed replies. *See* Dkt. Nos. 14, 15, & 16.

The undersigned enters these findings of fact, conclusions of law, and

recommendation that, to the extent and for the reasons explained below, the Court

should grant DPD's motion to dismiss, dismissing the claims against it with prejudice;

grant the City's motion to dismiss, dismissing the state law claims against it with prejudice and the constitutional claims against it without prejudice; and grant in part and deny in part the Officer Defendants' motion to dismiss, dismissing the state law claims asserted against those defendants with prejudice and dismissing all constitutional claims asserted against those defendants – except the Fourth Amendment unlawful seizure claim asserted against Officer Thompson in his personal capacity – without prejudice. The Court should also grant Staten leave to file a second amended complaint re-alleging the non-dismissed claim against Officer Thompson and limited to those claims that are dismissed without prejudice.

## Applicable Background

Staten characterizes this action as "arising under the United States Constitution, particularly under the provisions of the Due Process Clause and Fourth Amendment of the United States Constitution, and under federal law and in violation of his civil rights pursuant to 42 U.S.C. § 1983," and he "is seeking damages against [the City], particularly [DPD] for a pattern of [DPD] police misconduct and excessive use of force that has resulted in [his] malicious prosecution and false arrest ... as well as destruction of [his] property." Dkt. No. 4, ¶ 1. Against this general background, Staten asserts that Defendants violated his rights as protected by the First and Fourth Amendments and further brings various state law claims. His myriad of claims are supported by the following factual allegations:

> An alarming pattern of behavior has been displayed by DPD towards Plaintiff and/or the business he owns for at least three (3) years. Defendant City has allowed it's employee and Officer's misconduct and

harassment to continue to infringe on Plaintiff's constitutional rights and harass Plaintiff to a grossly unfair degree.

All matters have been properly documented and reported to the Dallas Police Department Internal Affairs Division, however the relentless harassment and misconduct has evolved into a blatant violation and disregard of Mr. Staten's constitutional rights and protections, requiring the filing of this lawsuit.

Specifically, on or about July 31, 2015, an employee of DPD, known only as Officer Rojas, tried to force his way into the business located at 3421 Merrifield Avenue, Dallas, Texas 75223 (herein "premises") in order to conduct an unlawful search while acting under color of state law and in the course and scope of his employment as a law enforcement officer with Defendant City.

At all material times, Plaintiff was the owner and operator of the business located on the premises. While in the presence of Plaintiff's business patrons, Officer Rojas proceeded to make false and defamatory statements, directing many remarks to some of the customers.

Plaintiff followed proper protocol to file a complaint, addressing the misconduct, through the Dallas Police Department Internal Affairs Divisions. Although the DPD Internal Affairs Division did not address Plaintiff's complaint, since that date, DPD has consistently harassed and mistreated Plaintiff, mounting to malicious prosecution and false arrest in late 2018.

In 2016, Officer Dan Collins, badge #9176, and Officer Ed Anaya, badge #5440, each acting under color of state law and in the course and scope of his employment as a law enforcement officer with Defendant City, suddenly and without warning, forced their way into the premises. DPD Officers Collins and Anaya verbally assaulted and tried to physically intimidate Mr. Staten, in an effort to coerce Plaintiff into signing an Affidavit implicating another in the theft of a motorcycle.

At all times material, Plaintiff expressed his desire for counsel multiple times, however, both of Defendant City's hostile employees, unconstitutionally ignored Plaintiff's invocation of his right to counsel.

Before their departure, as a result of Plaintiff's refusal to sign the Affidavit, Officer Collins and Officer Anaya made threatening remarks, indicating that Plaintiff would become the "target" of their investigation.

Subsequently, on April 3, 2016, Plaintiff was arrested by DPD and charged with the offense of Theft 2500, despite DPD, having no probable cause or reasonable suspicion to believe that Plaintiff had committed a crime. Only year later, on April 5, 2017, the State of Texas requested that cause number F-1675385 be dismissed after being unable to make its prima facie case, having no evidence that could prove the case.

The arrest and malicious prosecution of the charges have caused

and continue to cause damage to the Plaintiff's reputation and business.

In another instance, on or about May 27, 2016, DPD Detective Greg Fregeau, badge #7732, unlawfully seized a 2016 BMW 740I from the premises, along with all the vehicle's purchase and ownership documents. Detective Fregeau was acting under color of state law and in the course and scope of his employment with Defendant City at all times material. Moreover, at all relevant times, Plaintiff's corporate enterprise was legally the then recorded owner of the said vehicle.

After an extended investigation, on or about June 23, 2016, DPD allowed Plaintiff to pay the impound fees to release the vehicle into his possession from the official DPD Auto Pound located at 1955 Vilbig Road, Dallas, Texas 75208.

Suddenly and without warning, four (4) days later, on June 27, 2016, a squad of DPD Officers disrupted Plaintiff[s] neighborhood, surrounding Shomari Staten's home, demanding that the same vehicle be released back to DPD. Again, under the direction of Detective Fregeau, despite Plaintiff's willingness to comply with a warrant for the vehicle, DPD Officers kicked in Plaintiff's front door. DPD took the vehicle without detaining or arresting Plaintiff.

On or about July 10, 2016, Plaintiff was at his residential address, when unknown DPD Officers made unlawful entry into the home without a warrant. Despite Plaintiff's compliance, Mr. Staten was held at gun point and physically assaulted, before the Officers "realized he was the homeowner" and they "had made a very serious error."

The harassment was ongoing on or about August 5, 2016, when DPD Detective Fregeau directed that Plaintiff be arrested while in the Dallas County Tax Office. *Plaintiff was charged in Collin County, Texas (emphasis added)* with felony theft of property greater than $30,000 but less than $150,000 for the offense occurring on June 26, 2016. In addition, on that day, unknown DPD Officers executed another search warrant on the premises and seized multiple sets of Plaintiff's business records.

Cause number 401-80672-2017 came before the 401st District Court, Collin County, Texas, and on October 3, 2018 Plaintiff was acquitted of all charges. At trial, Defendant City's Detective, Greg Fregeau, openly admitted that he never believed Plaintiff was involved in the alleged theft and indicated that DPD efforts were to prosecute Plaintiff.

Despite Plaintiff's innocence and subsequent acquittal, this public arrest and malicious prosecution of the false charges have caused and continue to cause damage to the Plaintiff, prohibiting viable business opportunities and permanently soiling Shomari Staten's business and personal reputation.

On or about April 19, 2018, DPD Officers arrived on the premises

-4-

in connection with a dispute that was not related the Plaintiff and/or his business operations. There was no probable cause or reasonable suspicion to believe that Plaintiff had committed a crime that would require him to be detained, arrested, and interrogated. There is no evidence that Plaintiff posed a threat nor was anyone in danger by his presence in the immediate area. Plaintiff was violently attacked and assaulted by Defendant City's employee, known only as Officer Nguyen, badge #10740. As Officer Nguyen was acting under color of state law and in the course and scope of his employment as a law enforcement officer with Defendant City, several of Plaintiff's business patrons witnessed DPD's willingness to recklessly disregard Plaintiff's civil rights and continue in a dangerous pattern of abuse of authority and harassment.

Most recently, on Friday, April 20, 2018, Plaintiff was at his place of business on the premises, when suddenly and without warning, a group of unknown DPD officers stormed the location. Based on all information and belief, the DPD offices arrived at the located under the direction of the Defendant City's employees, known as Detective J. Thompson, badge #8837 and Detective Joshua Shipp, badge #9163.

At all relevant times, the said Detectives and DPD officers were on the premises, acting under color of state law and in the course and scope of employment as a law enforcement with the Defendant, looking for an individual who allegedly committed acts of domestic violence. DPD Officers knew and/or had reason to know that Plaintiff was not the individual they were seeking. Moreover, DPD officers knew and/or had reason to know that Plaintiff was not involved in the incident of domestic violence.

There is no evidence that Plaintiff posed a threat or that anyone was in danger by his presence in the immediate area. There were no struggles that would indicate that the use of excessive force was justified. Plaintiff had committed no crime that would require him to be detained, arrested, and interrogated.

Without cause, Plaintiff was assaulted and detained by Defendant's employee, known only as Officer Lowman, badge# 10352, and forcefully placed into the back of a squad car in handcuffs. Detectives assured Plaintiff that he was not involved, yet refused to release him from the vehicle.

The handcuffs that Officer Lowman placed on Plaintiff were unreasonably tight, causing excruciating pain throughout his wrists and shoulders. In addition, Mr. Staten sat in the squad car for over an hour, his legs began to experience sharp pain and discomfort. All the while, Officer Lowman was nearby making derogatory remarks about Plaintiff.

Plaintiff remained restrained in the vehicle, while several of his business patrons stood witnessing yet another turbulent situation,

resulting in further damages and a negative impact to his reputation as a credible car salesman.

Although he had been advised that he would be promptly released from the squad car, DPD Officer Lowman then falsely arrested Plaintiff, and took him from the premises to the DPD Headquarters. Upon arrival Officer Lowman did not remove the firm grip of the handcuffs, and again assaulted Plaintiff as he removed him from the vehicle. Officer Lowman then aggressively put Plaintiff into an interrogation room.

After more than an hour, Detective Shipp entered the interrogation room and began questioning Plaintiff about an incident, of which Plaintiff had no knowledge. Upon the persistence of Detective Shipp, Plaintiff asserted his right to an attorney. Nevertheless, Detective Shipp continuously attempted to interrogate Mr. Staten, despite the numerous requests to invoke his rights to consult with his attorney.

At no time did any DPD Officer or Detective explain to Mr. Staten why he had been placed under arrest. Likewise, Mr. Staten did not understand why he was treated like a criminal and handled so aggressively, when he had already been advised that DPD was aware that Mr. Staten was not involved in the matter. At no time did the DPD Officers or Detectives explain to Mr. Staten why he had been harassed, detained and/or arrested.

Upon his release, Mr. Staten was advised that even though he was taken by the Defendant's employees to the DPD headquarters, it was up to Mr. Staten to find his own way back to his place of business late at night. Moreover, Mr. Staten was told by Detective Shipp that his business had been declared a "crime scene" and informed him that he would be promptly arrested if he returned to the premises.

Accordingly, Mr. Staten did not return to the premises, but instead parked in a nearby lot to observe the ongoing police activity at the location. At approximately 4:00 a.m. on April 21, 2018, Mr. Staten noticed a Dallas Fire Department vehicle enter the premises where his business is situated. Mr. Staten approached the DPD Officers, including Detective Shipp, and notified the officers and fire department that he was the owner of the location and attempted to volunteer the keys for entry to avoid any damages to his property. Detective Shipp and the other DPD Officers nevertheless ignored his offer to mitigate damages and instructed the fire department to cut through the front door of the business location. Moreover, Mr. Staten's repeated request to see any search warrant that had been issued for his business were completely disregarded by Detective Shipp, until Plaintiff began recording the ordeal on his cell phone.

Upon gaining entry to the premises, Detective Shipp seized personal property of Mr. Staten, in addition to property belonging to the

business on the premises.

Following the horrific ordeal, Mr. Staten retained the services of a private investigator in order to make an effort to understand what occurred on his premises that day and why he was assaulted, detained, and interrogated without cause. Plaintiff was astonished to learn that DPD ventured onto his premises, based on a false report made by Chastity Lynch, who is unrelated to Plaintiff in any manner. As of the date of this filing, all allegations asserted by Chastity Lynch have been found to be untrue. Based on all information and belief, the investigation into this matter has concluded, however to date, Detective Shipp has refused and continues to refuse to return the seized items.

On the night that Plaintiff was viciously assaulted and falsely arrested by DPD Officers and Detectives, there was no probable cause or reasonable suspicion to believe that Plaintiff had committed a crime. In fact, the DPD officers and detectives had advised Plaintiff that they knew he was not involved in the matter while he was restrained in the squad car.

As a direct result of this incident, Plaintiff's professional reputation and his business has been impacted in negative manner. Moreover, due to the misconduct and excessive force of Officer Lowman, Plaintiff suffered significant injuries as well as pain and suffering and mental anguish.

The City of Dallas, the DPD and the Policymakers have a longstanding record of not providing DPD officers with adequate training and not preventing excessive force claims. Moreover, the City, DPD, and the Policymakers have failed to provide Officers and Detectives with adequate training on proper arrest and confrontation and/or interrogation techniques.

No reasonably competent official would have concluded that the actions of the Defendant's Officers and Detectives outlined hereinabove would not violate Plaintiff's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant City's conduct was justified nor reasonable.

Defendant's unlawful and unwarranted acts, lack of training and the official customs or policies of the DPD caused Plaintiff's injuries.

*Id.*, ¶¶ 9-45.

## Legal Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th

Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

While the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Discussion

I.    <u>DPD</u>

A plaintiff may not bring a civil action against a servient political agency or

department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313.

And, as judges of this Court have repeatedly recognized, the Dallas Police Department is not a jural entity subject to suit. *See, e.g., Hagwood v. Dallas Police Dep't*, No. 3:15-cv-2622-L-BN, 2015 WL 6688721, at *3 (N.D. Tex. Sept. 11, 2015), *rec. accepted*, 2015 WL 6690045 (N.D. Tex. Oct. 30, 2015); *see also Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the DPD as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby*, 939 F.2d at 313)).

The Court should therefore grant DPD's motion to dismiss, dismissing the claims asserted against it with prejudice.

II.    <u>The City</u>

A.    **State Tort Claims**

Staten elected to assert various tort claims – malicious prosecution, false arrest, false imprisonment, and assault and battery – against both the City and its employees. The City moves to dismiss these claims as against it under governmental immunity and as against its employees under the Texas Tort Claims Act ("TTCA"). *See Dorward*

*v. Ramirez*, No. 3:09-cv-18-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) ("The TTCA's waiver of immunity constitutes the 'only ... avenue for common-law recovery against the government' on a tort theory." (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008))); *Hatcher v. City of Grand Prairie*, No. 3:14-cv-432-M, 2014 WL 3893907, at *7 (N.D. Tex. Aug. 6, 2014)) ("Municipal governments are immune from tort suits except to the extent that immunity has been waived by [TTCA]." (citations omitted)).

The TTCA "waives the state's immunity from suit in certain circumstances"; "covers all tort theories that may be alleged against a governmental entity whether or not it waives that immunity"; and provides that, "'[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'" *Gil Ramirez Group L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 415 (5th Cir. 2015) (quoting TEX. CIV. PRAC. & REM. CODE § 101.106(e); citation omitted).

Therefore, "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462-63 (5th Cir. 2010) (citing *Garcia*, 253 S.W.3d at 658); *see also Quinn v. Guerrero*, 863 F.3d 353, 361-62 (5th Cir. 2017) ("As was the case in *Bustos*, Quinn asserted state-law claims against the City and the officers. '[A] suit asserting common law claims against a Texas governmental unit ... is considered to be under the TTCA.' Consequently, Section 101.106(e) applies, and the officers were

entitled to dismissal upon the City's motion. That motion was filed. The state court did not err in dismissing the common-law claims against the officers." (citation omitted)).

The Court should therefore dismiss the state-law tort claims asserted against the Officer Defendants.

As to those claims asserted against the City, "[a]lthough the TTCA waives immunity in certain limited circumstances, the waiver does not extend to claims 'arising out of assault, battery, false imprisonment, or any other intentional tort.'" *Hatcher*, 2014 WL 3893907, at *7 (citing TEX. CIV. PRAC. & REM. CODE § 101.021; then quoting TEX. CIV. PRAC. & REM. CODE § 101.057(2)). But here, all tort claims asserted are intentional in nature. *See, e.g., Groden v. City of Dallas*, No. 3:10-cv-1280-F, 2011 WL 13128611, at *2 (N.D. Tex. Aug. 15, 2011) ("It is well-established under Texas law that false imprisonment and malicious prosecution are intentional torts." (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 510-11 (Tex. 2002); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App. – Houston [1st Dist.] 1995, no writ))); *Morales v. City of Sugar Land*, Civ. A. No. H-13-3575, 2015 WL 1622003, at *8 (S.D. Tex. Apr. 9, 2015) ("False arrest is an intentional tort under Texas law." (citing *Stinson v. Fontenot*, 435 S.W.3d 793, 793 (Tex. 2014) (per curiam))).

Staten's claims against the City do not therefore fall within the limited waiver of governmental immunity provided by the TTCA. And the Court should dismiss those claims with prejudice.

### B.    Constitutional Claims

"A municipality and/or its policymakers may be held liable under § 1983 'when

execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote

-14-

omitted); *see also Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

"Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Pinedo*, 2015 WL 5021393, at *9 (citations omitted); *but cf. Anderson v. Marshall Cnty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (per curiam) ("Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." (citing *Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."))).

"To plead a plausible claim, [a plainitff] must allege facts that enable the court to draw the reasonable inference that '(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [his] injury.'" *Pinedo*, 2015 WL 5021393, at *9 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)); *accord Peña*, 879 F.3d at 623 (A "failure-to-train theory requires a plaintiff to prove that '1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001))).

-15-

Further, to the extent that Staten also employs a ratification theory of municipal liability, *see* Dkt. No. 4, ¶¶ 2, 61, 64, 84-86, the Fifth Circuit has held that, "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final," *Peterson*, 588 F.3d at 849 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

But the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification ... is limited to 'extreme factual situations.'" (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting, in turn, *Peterson*, 588 F.3d at 848))); *see also Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct by Officers Flagg and Jones, while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification." (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985))).

The Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)); *accord Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010); *Davidson*, 848 F.3d at 395; *see, e.g.*, *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (per curiam) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the

lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of medical care." (citation omitted)).

An examination of Staten's operative complaint shows that, as currently constituted, it lacks minimal factual allegations – allegations that are not mere legal conclusions and labels – that ultimately could support any theory of *Monell* liability. *See Peña*, 879 F.3d at 621 ("Though [a plaintiff] need not offer proof of her allegations at this stage, she still must plead facts that plausibly support each element of § 1983 municipal liability under [each] theory." (citing *Iqbal*, 556 U.S. at 678)). *Compare, e.g.,* Dkt. No. 4, ¶¶ 2, 43, 61, 64, 85, & 86, *with, e.g., E.G. by Gonzalez v. Bond*, No. 1:16-cv-68-BL, 2017 WL 3493124, at *6 (N.D. Tex. June 29, 2017) ("Despite the various arguments made by the City, the Court should find that Plaintiffs have made factual allegations in their second amended complaint to state plausible claims based upon failures to train, supervise, and discipline. Plaintiffs have identified training, supervision, and discipline procedures that are inadequate. They have also alleged that the City was deliberately indifferent in adopting the identified policies and that the inadequate policies directly caused their injuries. They have alleged sufficient facts to support these allegations and do not merely rely on conclusions and labels. When considering a motion to dismiss, minimal factual allegations are sufficient to assert a municipal liability claim." (citing *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012))), *rec. adopted*, 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017).

While the City, citing the need "to avoid unnecessary expense and delay,"

concedes that, as it is likely Staten will be granted leave to file an amended complaint, it is amenable to the Court's denying its motion to dismiss the constitutional claims without prejudice to "permit[ Staten] an opportunity to amend his complaint to cure the pleading deficiencies addressed in the City's motion to dismiss," Dkt. No. 15 at 7, a better alternative would be for the Court to grant the motion to dismiss filed by the City in full (for all the reasons set out immediately above) without prejudice to Staten's right to file an amended complaint against the City that reasserts the constitutional claims and includes the necessary factual allegations.

The Court should therefore grant City's motion to dismiss, dismissing the state law claims against it with prejudice but dismissing the constitutional claims against it without prejudice.

### III.   <u>Officer Defendants</u>

Having recommended dismissal of the state-law tort claims against the Officer Defendants under the TTCA's election of remedies provision, as set out above, the undersigned will turn to Staten's First and Fourth Amendment claims against these defendants.

But first, to the extent that Staten asserts official capacity claims against these defendants, "[a]n official-capacity lawsuit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). When an individual is sued is his official capacity, liability is imposed "on the entity that he represents provided, of course, the public entity received notice and an opportunity to

respond." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471-72, (1985)); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Thus, where a plaintiff brings claims against both a public official, such as a law enforcement officer, in his official capacity and the public entity for which he works, the claims "essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). The Court may then dismiss the claims against the public official as duplicative. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996) (where the district court had dismissed claims against county commissioners in their official capacities "because those claims were duplicative of the claims against the County"); *see also Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 832 (S.D. Tex. 2011) ("The Fifth Circuit has held that it is appropriate to dismiss claims against officers in their official capacities when the 'allegations duplicate claims against the respective governmental entities themselves.'" (quoting *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001))).

The Court should therefore dismiss any official capacity claims asserted against the Officer Defendants with prejudice.

Staten's First Amendment claim sounds in retaliation – that "DPD officers and detectives" retaliated against him ("assaulted [him] verbally and physically, detained [him] in the squad car, falsely arrested and prosecuted the charges without probable cause, improperly interrogating [him] as well as damaged and unlawfully seized [his]

property") after he filed a report with Internal Affairs. Dkt. No. 4, ¶¶ 87-93.

> To prevail on a § 1983 claim for First Amendment retaliation, [Staten] must show that "(1) he was engaged in constitutionally protected activity; (2) the defendant[s'] actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant[s'] adverse actions were substantially motivated by the constitutionally protected conduct."

*McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2018) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); footnote and original brackets omitted).

Alleging a First Amendment violation based on retaliation "requires some showing that the plaintiff's exercise of free speech has been curtailed." *Id.* at 696-97 (quoting *Keenan*, 290 F.3d at 259; citations omitted). Although, the chilling "effect on freedom of speech ... need not be great in order to be actionable," *Keenan*, 290 F.3d at 569 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)), a plaintiff must allege curtailment of his speech to state a plausible claim for retaliation under the First Amendment, *see, e.g.*, *McLin*, 866 F.3d at 697 ("The assertion that McLin suffered 'violations of his First Amendment rights' is a legal conclusion and is not entitled to an assumption of truth. McLin is left with an allegation of 'great personal damage,' which does not demonstrate that he reduced or changed his exercise of free speech in any way." (citations omitted)).

That said, "[l]egally, a false arrest may chill further speech by a person of ordinary sensibilities." *Arizmendi v. Brownsville Indep. Sch. Dist.*, No. 1:16-CV-00063, 2017 WL 4479951, at *10 (S.D. Tex. May 26, 2017) (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("'[A]rresting someone in retaliation for their exercise of

free speech rights' is sufficient to chill speech is an understatement." (quoting *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008)))), *rev'd on other grounds*, 919 F.3d 891 (5th Cir. 2019). That allegation, present here, satisfies the second prong for pleading purposes.

Turning to the third prong, ultimately, "[a] plaintiff may demonstrate that his protected conduct was a substantial or motivating factor behind a defendant's action by providing direct evidence of a retaliatory motive, or by relying upon 'a chronology of events from which retaliation may plausibly be inferred.'" *Hanna v. LeBlanc*, Civ. A. No. 15-2851, 2017 WL 2198345, at *10 (W.D. La. Mar. 8, 2017) (quoting *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1425 (5th Cir. 1997)), *rec. adopted*, 2017 WL 2198188 (W.D. La. May 18, 2017).

Here, Staten's asserted chronology of events lacks sufficient facts to raise a plausible inference that any Officer Defendant now moving to dismiss Staten's claims against him possessed a retaliatory motive to the extent that particular Officer Defendant participated in Staten's arrest(s) in 2016 or 2018, because Staten has not provided enough facts linking his July 2015 complaint to Internal Affairs to any allegedly false arrest to raise the necessary plausible inference.

The Court should therefore dismiss this claim without prejudice to Staten's repleading it with sufficient factual detail through an amended complaint.

Turning to the Fourth Amendment claims based on excessive force and unlawful seizure,

[e]xcessive-force claims are "governed by the Fourth Amendment's

-21-

> 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774
> (2014). "[A] plaintiff must show (1) an injury, (2) which resulted directly
> and only from the use of force that was clearly excessive, and (3) the
> excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585
> F.3d 839, 843 (5th Cir. 2009) (internal quotation marks omitted).
> "Excessive force claims are necessarily fact-intensive": What is excessive
> in one case may be permissible in another. *Deville v. Marcantel*, 567 F.3d
> 156, 167 (5th Cir. 2009) (per curiam).

*Garza v. Briones*, 943 F.3d 740, 744-45 (5th Cir. 2019).

Alleging an unlawful seizure (or false arrest) claim is similarly fact-intensive.

And such a claim generally "requires a showing of no probable cause." *Arizmendi v.*

*Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro, L.L.C. v. Hilton*, 568

F.3d 181, 204 (5th Cir. 2009)); *see also James v. Dallas Police Dep't*, 499 F. App'x 329,

329 (5 th Cir. 2012) (per curiam) ("Probable cause is required for a warrantless arrest."

(citing *Deville*, 567 F.3d at 164)).

> "An officer may conduct a warrantless arrest based on probable cause
> that an individual has committed even a minor offense, including
> misdemeanors." *Deville*, 567 F.3d at 165. However, "[w]arrantless
> seizures of a person inside his home are presumptively unreasonable.
> Only exigent circumstances or consent justify such an arrest." *United*
> *States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (internal quotation
> marks and citation omitted). "The burden is on the government to prove
> the existence of the exigency." *United States v. Rico*, 51 F.3d 495, 501 (5th
> Cir. 1995). "Exigent circumstances include those in which officers
> reasonably fear for their safety, where firearms are present, or where
> there is a risk of a criminal suspect's escaping or fear of destruction of
> evidence." *Id.* (internal quotation marks and citation omitted).

*James*, 499 F. App'x at 329-30 (citation modified).

But, before addressing the facts supporting Staten's Fourth Amendment claims

for excessive force (based specifically on events on July 10, 2016 and April 19 and 20,

2018, *see* Dkt. No. 4, ¶¶ 57-59) and unlawful seizure (similarly based on his arrest(s)),

the Court must consider each Officer Defendant's alleged role as to these claims. "When the plaintiff's complaint uses blanket terms covering all the defendants, by lumping them together or calling them collectively ["Defendants"] these allegations are properly disregarded unless the reference to [particular defendants] can be clearly inferred." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 & n.14 (11th Cir. 2015) (characterizing that decision as "describing this form of 'shotgun pleading' as a 'sin' consisting of 'asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions'")).[1]

Neither Officer Roden nor Officer Rowe is mentioned in the amended complaint (other than in the caption and as a party). *See generally* Dkt. No. 4. Officer Thompson

---

[1] *See also Greer v. City of Highland Park, Mich.*, 884 F.3d 310, 315-16 (6th Cir. 2018) ("The officers argue that the Greers are required to specify what actions each officer took during execution of the warrant. Although 'damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right,' courts are disinclined to dismiss complaints that fail to allege specific conduct by each officer when the officers' actions have made them impossible to identify. ... Here, the Greers' 'inability to identify the specific officers involved in their alleged deprivation of rights does not mandate dismissal' because the officers allegedly wore face masks and refused to identify themselves. Thus, 'the agents' intent to conceal contributed to [the Greers'] impaired ability to identify them.' ... [T]he parties here do not dispute that a raid of the Greers' home occurred, and the appealing officers have been identified as the parties who executed the search warrant. Under these circumstances, if we dismissed the Greers' complaint at the pleading stage, we would risk immunizing officers to Fourth Amendment claims so long as they successfully disguised their identities." (citations omitted)).

is alleged to have directed the officers who arrested Staten on April 20, 2018. *See id.*, ¶ 28. Officer Rojas is the officer against whom Staten filed a complaint with Internal Affairs. *See id.*, ¶ 11. Officers Collins and Anaya are alleged to have "forced their way into [Staten's] premises" in 2016, making "threatening remarks" after Staten refused to sign an affidavit. *Id.*, ¶¶ 14-16. And Officer Fregeau was involved in the allegedly unlawful seizure of Staten's vehicle in May 2016 and his arrest on Collin County charges in August 2016. *See id.*, ¶¶ 19-25.

And examination of the operative complaint reveals that it lacks, at a minimum, factual allegations from which the Court may infer that any particular Officer Defendant now moving to dismiss Staten's claims injured him or acted with excessive force.

As to his alleged seizures/arrests, Staten alleges that Officer Fregeau participated in his arrest on Collin County charges in August 2016. But these allegations do not show that Staten's arrest in August 2016 was absent probable cause, as the Court may plausibly infer that he was arrested pursuant to a warrant out of Collin County. In contrast, Officer Thompson allegedly directed (or was otherwise involved with) Staten's April 2018 warrantless arrest at his place of business. And, "[t]aking all of [Staten's] allegations as true, [his] claim that the police lacked probable cause to arrest him inside of his [business] does not lack 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *James*, 499 F. App'x at 330 (citation omitted); *see* Dkt. No. 4, ¶¶ 28-30.

The Court should therefore dismiss the constitutional claims asserted against

the Officer Defendants except the Fourth Amendment wrongful seizure claim asserted against Officer Thompson in his personal capacity. But the claims that the undersigned recommends that the Court dismiss should be dismissed without prejudice to Staten's right to file a second amended complaint.

## Recommendation

The Court should grant the Dallas Police Department's motion to dismiss [Dkt. No. 6], dismissing the claims against it with prejudice; grant the City of Dallas's motion to dismiss [Dkt. No. 7], dismissing the state law claims against it with prejudice and the constitutional claims against it without prejudice; and grant in part and deny in part the Officer Defendants' motion to dismiss [Dkt. No. 8], dismissing the state law claims asserted against those defendants with prejudice and dismissing all constitutional claims asserted against those defendants – except the Fourth Amendment unlawful seizure claim asserted against Officer Jerry Thompson – without prejudice. The Court should also grant Plaintiff Shomari Staten leave to file a second amended complaint re-alleging the non-dismissed claim against Officer Thompson and limited to those claims that are dismissed without prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 17, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE