IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHOMARI STATEN,                    §
                                   §
            Plaintiff,             §
                                   §
V.                                 §          No. 3:19-cv-843-L-BN
                                   §
CITY OF DALLAS, ET AL.,            §
                                   §
            Defendants.            §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Shomari Staten, represented by counsel and through a second amended complaint [Dkt. No. 28] (the SAC), now alleges constitutional violations against Defendant City of Dallas and three Dallas police officers: Defendants Officer Ryan Lowman, Officer Tu Nguyen, and Detective Jerry Thompson (collectively the Officer Defendants). *See also, e.g.*, Dkt. No. 55 (confirming that these are the only remaining defendants).

United States District Judge Sam A. Lindsay referred Staten's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 5.

The Officer Defendants answered the SAC and filed a court-ordered motion for summary judgment on their affirmative defense of qualified immunity. *See* Dkt. Nos. 39, 40, 51-53, 69, 70.

Staten then moved for leave to conduct limited discovery in order to respond to the qualified immunity issues raised in the summary judgment motion. *See* Dkt. No.

56. The Court granted leave, and the parties cooperated in the production of the discovery authorized by the Court. *See* Dkt. Nos. 57-60.

After the parties informed the Court that all authorized discovery would be produced within the next two weeks, the Court re-opened this case – administratively closed if the discovery process became protracted. *See* Dkt. Nos. 60-62. Staten responded. *See* Dkt. Nos. 65-67. And the Officer Defendants replied. *See* Dkt. 68.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment as to qualified immunity and dismiss the claims against the Officer Defendants with prejudice.

## Legal Standards

"A plaintiff makes out a [42 U.S.C.] § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

If they do, a court must consider each official's actions separately, *see Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see Ramirez v. Guadarrama*, ___ F.4th ____, No. 20-10055, 2021 WL 2637199, at *2 (5th Cir. Feb. 8, 2021) (per curiam) ("Because qualified immunity is an *immunity from suit*, not merely

a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.' It is for this reason that a denial of qualified immunity is immediately appealable and that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation. This scheme prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); citations omitted)).[1]

> [T]he doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." These interests are distilled into a legal standard, an affirmative defense, that shields public officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), then *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Phrased differently, this immunity "attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

---

[1] *See also Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) ("[B]ecause qualified immunity is 'not simply immunity from monetary liability' but also 'immunity from having to stand trial,' there is an interest in qualified immunity entering a lawsuit 'at the earliest possible stage of litigation.'" (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting, in turn, *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)))).

The doctrine therefore "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015). "'Accordingly, "qualified immunity represents the norm," and courts should deny a defendant immunity only in rare circumstances.'" *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting, in turn, *Harlow*, 457 U.S. at 807)); *but see, e.g., Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020) (calling for reconsideration of the doctrine).

The "qualified-immunity inquiry is two-pronged." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)).

- Do "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600)

- Was "the right at issue [] 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (cleaned up; quoting *Pearson*, 555 U.S. at 232).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 2021 WL 2637199, at *2 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus

merged into one issue for purposes of the qualified immunity analysis." *Id.*; *cf. Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) ("Fair notice requires clearly established law. That is, the law must 'clearly prohibit the officer's conduct in the particular circumstances before him' so 'every reasonable official' knows not to engage in that conduct." (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018); citing *al-Kidd*, 563 U.S. at 742)).

Under this standard, "'[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officers] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officers did].'" *Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) (quoting *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (citing, in turn, *Wesby*, 138 S. Ct. at 590 ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know."))).

A court may "'analyze the prongs in either order or resolve the case on a single prong.'" *Cunningham*, 983 F.3d at 191 (quoting *Garcia*, 957 F.3d at 600). But addressing this affirmative defense on a motion for summary judgment is not exactly intuitive.

"A plaintiff suing for a constitutional violation has the ultimate burden to show that the defendant violated a constitutional right … whether or not qualified immunity is involved." *Joseph*, 981 F.3d at 329 (footnote omitted).

But, "[w]hen a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Id.* at 329-30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)); *accord Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)). "In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law." *Joseph*, 981 F.3d at 330 (citing *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016)).

Once shifted, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted). And, "[t]o rebut [a public official's] qualified immunity defense, a plaintiff must point to summary judgment evidence '(1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (cleaned up).

As to the first prong of the qualified-immunity inquiry, to overcome a public official's motion for summary judgment on qualified immunity, the plaintiff "must show that there is a genuine dispute of material fact and that a jury could return a

verdict entitling the plaintiff to relief for a constitutional injury" – just as would be required "if the plaintiff did not face qualified immunity." *Joseph*, 981 F.3d at 330. That is, the plaintiff must defeat summary judgment by showing that "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," *Cunningham*, 983 F.3d at 190-91.

When considering this showing, the Court must "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But the Court need not do so if the plaintiff's "version 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Joseph*, 981 F.3d at 325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); citing *Orr*, 844 F.3d at 590).

When accepting the plaintiff's well-supported version of the disputed facts, the Court must "view the facts and draw reasonable inferences in the light most favorable to" the plaintiff. *Id.* (footnote omitted). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)); *see, e.g.*, *Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam).

But "the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330. So, "when qualified immunity is involved, at least in this circuit, a plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged

violation." *Id.* at 329 (footnote omitted).

And "[t]he 'clearly established' prong is difficult to satisfy." *Cunningham*, 983 F.3d at 191; *see also Cope v. Cogdill*, ___ F.4th ___, No. 19-10798, 2021 WL 2767581, at *3 (5th Cir. July 2, 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous [United States] Supreme Court precedents.").

The plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix*, 577 U.S. at 11). And "[t]here are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

The first approach "requires the plaintiff to 'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances ... was held to have violated the [Constitution]," *Joseph*, 981 F.3d at at 330 (footnote omitted); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "'controlling authority – or a "robust consensus of [cases of] persuasive authority" – that defines the contours of the right in question with a high degree of particularity.'" (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see also Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly

established." (footnote omitted)).

"It is the plaintiff's burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting, in turn, *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016))). Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up; quoting *White*, 137 S. Ct. at 552 (quoting, in turn, *al–Kidd*, 563 U.S. at 742)). And a clearly established right must be defined "'with specificity.'" *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam)).

"This rule is a 'demanding standard.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 589). And "'[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.'" *Nerio*, 974 F.3d at 575 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

"While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Joseph*, 981 F.3d at 330 (footnotes omitted); *accord Tucker*, 998 F.3d at 173-74 ("For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White*, 137 S. Ct. at 551 (internal quotation marks

omitted); citing *Mullenix*, 577 U.S. at 14)).

"'The central concept is that of "fair warning": The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."' *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting, in turn, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))).

"In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent*, 805 F.3d at 547).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 138 S. Ct. at 590); *accord Batyukova*, 994 F.3d at 726. "[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338. And "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 2021 WL

2767581, at *4 (quoting *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam)).

## Analysis

Staten alleges as to the Officer Defendants, in sum, that, on April 19, 2018, Nguyen "unlawfully detained [him], arrested him, and used excessive force against him," while, the next day, Thompson and Lowman "unlawfully detained and arrested [him] in retaliation for asserting his constitutional rights" and "confiscated the DVR containing the security camera footage that documented Nguyen's assault of [him], and subsequently the footage was erased." Dkt. No. 28 at 2, ¶ 2; *see also id.* at 14-19, ¶¶ 94-145. Staten further alleges that, while arresting him, Thompson and Lowman used excessive force. *See id.* at 33, ¶ 222.

But Staten also asserts that these incidents weren't isolated and, in fact, occurred only after his being repeatedly targeted by Dallas police over several years. *See, e.g.*, Dkt. No. 66 at 6-11 (citing to allegations in the SAC, not evidence in the record). And he urges the Court to consider this background in ruling on the motion for summary judgment:

> Although Plaintiff has stipulated to a dismissal of his claims against Officers Stolarzyk, MacDonald, Garrett, Anaya, Collins, Rojas, Rowe and Roden because of the statute of limitations, the unlawful actions by these Officers leading up to Plaintiff's claims against [the Officer] Defendants are highly relevant incidents where Plaintiff was targeted by the Dallas police prior to these Defendants' actions against Plaintiff. These prior incidents of unlawful and harassing actions by the dismissed Defendants form the backdrop of Plaintiff's claims against the remaining Defendants – all of whom are Officers of the Dallas Police Department.

*Id.* at 6 (footnote omitted).

Staten further urges the Court to deny qualified immunity on summary

judgment based on what he contends are questions of fact and his alleged inability to

so far obtain discovery:

> The record as it currently stands contains issues of fact requiring denial of Defendants' Motion. Although Defendants are correct that Plaintiff must plead specific facts to overcome Defendants' qualified immunity defense, Defendants fail to recognize that on a summary judgment motion the court must accept as true Plaintiff's version of the facts. Plaintiff has submitted credible factual evidence that Defendants between 2015 and 2018, Plaintiff was unlawfully detained, arrested and searched by Defendants on six different occasions. Throughout this time, Plaintiff has suffered a recurring cycle of abuse by Defendants where his constitutional rights are violated, he complains to the DPD's Internal Affairs Division ("Internal Affairs" or "IAD"), his complaints are ignored, and Defendants violate Plaintiff's constitutional rights again in retribution. Though Defendants argue that they are protected from liability under the doctrine of qualified immunity, relying on Plaintiff's allegations without the having obtained any discovery from the Defendants, they are not. Defendants' argument is based upon their disputed version of what Defendants did on April 19, 2018 and April 20, 2018. There are factual discrepancies between what Plaintiff has alleged Defendants did and what Defendants are admitting to. Therefore, summary judgment is premature, and the Court should award limited discovery to proceed to further extrapolate what exactly Defendants did to Plaintiff and if their actions which violated Plaintiff's constitutional rights, if pleaded as Plaintiff claims, are not entitled to qualified immunity under the law.

*Id.* at 5.

Staten is correct insofar as that, at summary judgment on qualified immunity, the Court must view the facts in the light most favorable to him to determine whether he has shown both that there is a genuine dispute of material fact and that a jury could decide in his favor as to an alleged constitutional violation. But his version of the facts must be supported by proper summary judgment evidence.

At this stage, allegations alone will not carry Staten's burden to demonstrate that an Officer Defendant is not entitled to qualified immunity. Staten must instead

point to proper summary judgment evidence that shows that, when the facts are viewed in the light most favorable to him, a federal statutory or constitutional right was violated (the first prong of qualified immunity). He must then show that his version of the disputed facts supported by proper summary judgment evidence constitutes a violation of clearly established law (the second prong). And, because a court may "'resolve the case on a single prong,'" *Cunningham*, 983 F.3d at 191, it is not enough to defeat summary judgment on qualified immunity to argue that "[t]here are factual discrepancies between what [a plaintiff] <u>has alleged</u> [a government official] did and what [the official admits] to," Dkt. No. 66 at 5 (emphasis added).

Staten also argues that "summary judgment is premature, and the Court should award limited discovery to proceed to further extrapolate what exactly [the Officer] Defendants did to Plaintiff and if their actions which violated Plaintiff's constitutional rights, if pleaded as Plaintiff claims, are not entitled to qualified immunity under the law." *Id.*

But the undersigned cannot agree that Staten was not afforded the limited discovery that he now seems to request. The Court allowed Staten to file a motion for leave to conduct limited discovery in order to respond to the qualified immunity issues raised in the summary judgment motion. *See* Dkt. No. 54. He did. *See* Dkt. No. 56. The Officer Defendants responded. *See* Dkt. No. 57. The Court requested that the parties meet and confer as to the discovery requests. *See* Dkt. No. 58. The parties did, they resolved their disputes without seeking the Court's intervention, and the agreed-upon discovery was provided prior to Staten's filing his response, *see* Dkt. Nos. 59-62.

Staten's response is also not a proper (and effectively second) motion under Federal Rule of Civil Procedure 56(d).

The Court's order setting a deadline to respond to the summary judgment motion specifically advised Staten that "[a] motion for continuance made under Federal Rule of Civil Procedure 56(d) must be filed separately and may not be included in the response to the motion for summary judgment, brief in support thereof, or any other document." Dkt. No. 62 at 2-3.

Further, "Rule 56(d) requires a party requesting additional discovery as to facts essential to its opposition of a motion for summary judgment to present an affidavit or declaration." *Leza v. City of Laredo*, 496 F. App'x 375, 377 (5th Cir. 2012) (per curiam). This affidavit or declaration must "state with some precision the materials [the party opposing summary judgment] hope[s] to obtain with further discovery, and exactly how he expect[s] those materials w[ill] assist him in opposing summary judgment." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993) (holding that a party's "failure to do any of this precludes [a court of appeals] from finding that the district court's refusal of a continuance was an abuse of discretion" (footnote omitted)).

So, particularly where a party opposes summary judgment as to qualified immunity – where that party must also carry the day on the independent clearly-established prong – the nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *SEC v. Spence & Green Chem. Co.*, 612

F.2d 896, 901 (5th Cir. 1980)).

Against this background, the undersigned will address the qualified immunity prongs in order.

I.    Staten has not shown that any of the Officer Defendants violated a constitutional right.

Staten's burden on prong one is "[t]o rebut [an individual officer's] qualified immunity defense" by "[p]oint[ing] to summary judgment evidence" "'that [the officer in question] violated a federal statutory or constitutional right.'" *Cloud*, 993 F.3d at 383 (quoting *Rich*, 920 F.3d at 294). While his response does point to Staten's own declaration made under penalty of perjury [Dkt. No. 67-1], the response overwhelmingly relies on the allegations in the SAC, allegations that are not themselves summary judgment evidence. *Cf. Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020) ("The district court cannot be said to have resolved conflicting facts in favor of Deputy Parker, however, because Mrs. Renfroe did not offer any competent evidence of her own alleged facts. Despite being present, Mrs. Renfroe did not submit an affidavit describing what she saw as the shooting unfolded. And the allegations in her complaint are insufficient." (citing *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) ("Conclusory allegations unsupported by specific facts ... will not prevent an award of summary judgment; the plaintiff [can]not rest on his allegations ... to get to a jury without any significant probative evidence tending to support the complaint.")))

This posture makes it difficult to set out, for the purpose of accepting as true, Staten's best "version of the facts (to the extent reflected by proper summary

judgment evidence)." *Haggerty*, 391 F.3d at 655. Add to this that there are video recordings.

While the Court generally "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted), it must "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene," *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing, in turn, *Scott*, 550 U.S. 372)). Thus, "[w]hen one party's description of the facts is discredited by the record, [a court] need not take his word for it but should view 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott*, 550 U.S. at 380-81); *accord Joseph*, 981 F.3d at 325 (Where a court "proceed[s] through the facts in detail, including the disputed facts, considering each officer's actions independently," it "draw[s] these facts from the record, prioritizing the video evidence." (footnotes omitted)).

Under this guidance, the undersigned will proceed through the facts supported by the evidentiary record (not mere allegations) and will give priority to the video recordings to the extent that they are dispositive. *Cf. Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) ("The district court ruled that there were genuine disputes as to material facts. The officers urge us to review the genuineness in light of the video evidence and *[Scott v. ]Harris*'s exception to the jurisdictional limitation. We agree with the plaintiffs, however, that the video evidence does not unequivocally disprove

their version of events, which we therefore accept for purposes of this appeal." (footnote omitted)).

### A.    Reasonable Suspicion to Detain and Probable Cause to Arrest

"A seizure must be 'justified at its inception.'" *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (quoting *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004)). Indeed, the Constitution "contemplates searches and seizures based 'upon probable cause,'" *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021) (quoting U.S. CONST. amend. IV), such that "[w]arrantless searches and seizures are presumptively unreasonable, subject to certain exceptions," *McKinney*, 980 F.3d at 490 (citing *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)).

An exception applicable here is "that 'officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot.'" *Id.* (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing *Terry v. Ohio*, 392 U.S. 1 (1968)). And, "'[a]lthough a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014); citation omitted).

To justify reasonable suspicion for a brief detention, an officer, rather than relying on hunches, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that

intrusion." *Terry*, 392 U.S. at 21. And a court "look[s] at 'the totality of the circumstances' in determining whether an officer had a particularized and objective basis for suspecting criminal activity." *United States v. Reyes*, 963 F.3d 482, 488 (5th Cir. 2020) (quoting *Glover*, 140 S. Ct. at 1191). "That analysis 'is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion.'" *Id.* (quoting *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999)).

"The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

"The facts must be known to the officer at the time of the arrest" and "must be particularized to the arrestee." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted). And a court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted); *see also McLin v. Ard*, 866 F.3d 682, 694 (5th Cir. 2017) ("[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" (quoting *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting, in turn,

*United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)))).

The evidence viewed in the light most favorable to Staten is that, early in the evening on April 19, 2018, Nguyen was dispatched to a disturbance involving an armed encounter at 3425 Merrifield Avenue in Dallas (Staten's business is located at 3421 Merrifield Avenue). *See* Dkt. No. 53-1 at 25 (Nguyen's declaration). Staten does not dispute this. *See, e.g.*, Dkt. No. 66 at 19 ("Plaintiff alleges that Officer Nguyen was investigating a disturbance unrelated to Plaintiff …."). And the remainder of Nguyen's declaration is consistent with the video recordings reviewed by the undersigned. *Compare* Dkt. No. 53-1 at 25-26, *with, e.g.*, Dkt. No. 53, Exs. 1-A.

This declaration provides:

> When I arrived at [3425 Merrifield Avenue], I spoke with two Hispanic construction workers at a construction site that was adjacent to a used car lot located at 3421 Merrifield Avenue. I later learned that the used car lot was owned by Shomari Staten, the plaintiff in this civil action. The construction workers told me that some guys at Mr. Staten's business kept coming over to the construction site and harassing them with a gun. As I spoke with the construction workers, I personally observed several men on the grounds of the car lot and asked the construction workers whether one of those men had the gun. They told me "the one in brown." I personally observed a man in a brown top and asked whether the construction workers were referring to the person with the cutoff shirt, which they confirmed. I later learned that the person whom the constructions workers identified was Mr. Staten. The construction workers also told me that Mr. Staten had been holding a black revolver during his encounter with then. The men were unable to confirm whether Mr. Staten had the revolver in his pocket, only that they had seen him point it at one of their co-workers that day.
>
> ….
>
> I walked over to the car lot to further my investigation. Additional DPD officers, including DPD Officer Ryan Lowman, arrived on scene as I talked with one of the men on the lot, who claimed that the Hispanic construction workers had made racist comments to Mr. Staten or his employees. One of the construction workers also reportedly yelled at Mr. Staten and Sharmont Lynch, one of Mr. Staten's employees, that he (the

construction worker) had a "big gun." The man repeatedly stated that Mr. Staten did not have a gun on him. As I was speaking with that witness, I observed Mr. Staten came out of the building wearing a sleeveless brownish orange vest. His hands were concealed in the vest pockets. Based on the information provided by the construction workers and that Mr. Staten's clothing fit the description of the suspect, I had reasonable suspicion to believe that Mr. Staten had committed a terrorist threat, and that he could be armed and dangerous. I asked him Mr. Staten to take his hands out of his pockets. Mr. Staten did not comply. I ordered him multiple times to show me his hands, and Mr. Staten responded by continuing to conceal one or both of his hands and yelling at me about how he was on his own property. Mr. Staten's failure to comply with my verbal commands and his aggressive behavior did not dispel my fear that Mr. Staten might be armed in light of the gun the construction workers had told me about. Therefore, for my safety and those around me, I reached over and pulled his hand out of his pocket. His hand was empty when I pulled it out of his pocket. … Mr. Staten pulled away and continued to yell at me and walked back into the building.

Dkt. No. 53-1 at 25-26.

According to Nguyen, this ended his encounter with Staten. *See id.* at 26. But, in his declaration, Staten adds that "[w]hen [he] was arrested by Officer Nguyen, part of the altercation is not on the video evidence presented by Defendants"; that "[t]here was a point where Officer Nguyen had me in an arm lock and was trying to force me to the ground"; and that "[t]here was a struggle, and the video evidence only shows me trying to push him off." Dkt. No. 67-1, ¶¶ 2-4.

Even crediting Staten's declaration, and accepting his conclusion that he was arrested that day, as opposed to just being detained for questioning, the record evidence reflects that, at the time Nguyen first encountered Staten, Nguyen possessed a reasonable belief that Staten had made a terroristic threat, and thus there was probable cause. *See* TEX. PENAL CODE § 22.07(a)(2) ("A person commits an offense if he threatens to commit any offense involving violence to any person or

property with intent to" "place any person in fear of imminent serious bodily injury.").

There was necessarily also reasonable suspicion to detain Staten for questioning.

Turning to Lowman, Staten does not dispute that Lowman was dispatched to Staten's business to provide cover for Nguyen on April 19, nor does Staten contest Lowman's testimony that "[n]either Mr. Staten nor his employee, Mr. Sharmont Lynch, were ultimately arrested, but I issued citation number C21-788978 to Mr. Lynch for assault via verbal threat." Dkt. No. 53-1 at 21. Further uncontested, Lowman provides that, when he was again dispatched to Staten's business, the next day,

> I learned the following information from DPD Officers Angel Ayala and Jerimiah Hare and the complainant, Chastity Lynch: Ms. Lynch reported that she arrived home after work that afternoon, both her car and its spare key were missing. Ms. Lynch asked her friend, Ms. Kenedra Patterson, to drive her to Viva El Rey Auto, where Ms. Lynch's husband, Sharmont Lynch, is an employee[,] so that she could check if her car was there. When Ms. Lynch arrived, she saw her car parked outside Plaintiff's business. Ms. Lynch then opened the front door of Plaintiff's business and yelled inside at Mr. Lynch to give her back her keys. Mr. Lynch then grabbed a gun that looked to be an AR-15 style rifle from under his desk and walked toward her. Ms. Lynch fled the building, and Mr. Lynch followed her outside with the gun. He then pointed the gun at Ms. Lynch and said, "Bitch, I'll shoot you!" and told her to leave. Ms. Lynch fled across the street and called 911. I also interviewed Ms. Patterson, who corroborated Ms. Lynch's description of Mr. Lynch coming outside with a gun.
>
> Officer Ayala, Officer Hare and I went to the front door of Plaintiff's business to speak with Mr. Lynch. Plaintiff locked the door and refused to let the officers in or speak with them. Both Plaintiff and Mr. Lynch were locked inside the building. Plaintiff responded to the officers' requests to open the door and speak with them with obscenity-laden tirades. …
>
> Officers Ayala, Hare, and I waited outside the business, and eventually Mr. Staten and Mr. Lynch came out. I patted down Mr.

- 21 -

> Staten to check for weapons and asked him if he had any weapons on
> him. I then asked Mr. Staten what was going on, and Mr. Staten started
> yelling about how he had nothing to do with this. …

*Id.* at 22 (citations omitted); *see also* Dkt. No. 53, Ex. 1-F (Lowman's body camera

footage corroborating this account).

Ms. Lynch was ultimately charged with making a false police report. *See, e.g.*,

Dkt. No. 53-1 at 19 (Thompson declaration) ("I reviewed the video captured by Mr.

Staten's surveillance camera, which revealed that Ms. Lynch had fabricated the

allegations about Mr. Lynch pointing a gun at her. Mr. Lynch and Mr. Staten were

released without charging, and Ms. Lynch was arrested and charged with making a

false police report.").

But this development does not negate that Staten and Mr. Lynch's refusal to

open the door at the officers' requests provided a basis to believe that both were

interfering with the officers' public duties, which itself is a criminal offense. *See* TEX.

PENAL CODE § 38.15(a)(1) ("A person commits an offense if the person with criminal

negligence interrupts, disrupts, impedes, or otherwise interferes with" "a peace officer

while the peace officer is performing a duty or exercising authority imposed or

granted by law.").

Staten offers no evidence to contest this evidentiary showing of probable cause.

And the information from the scene was conveyed to Thompson, *see* Dkt. No.

53-1 at 19 ("Officers Ayala and Hare also told me that when they went to the front

door of Viva El Rey Auto to speak with Mr. Lynch, Mr. Staten locked the door and

refused speak with the officers or allow them inside the building. Mr. Staten and Mr.

Lynch remained locked inside the building while the officers waited outside until the

two men eventually came out. I spoke with Domestic Violence Sergeant Jeffrey Kennard, and relayed to the officers his instructions to bring Mr. Lynch and Mr. Staten to police headquarters to be interviewed."); *see also* Dkt. No. 67-1, ¶¶ 8, 9 (Staten's consistent declarations)

Thus, Thompson too possessed a basis to believe that both Staten and Mr. Lynch were interfering with the officers' public duties and thus committing a criminal offense. *See United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007) ("Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts." (citing *United States v. Kye Soo Lee*, 962 F.2d 430, 435 (5th Cir. 1992))).

This probable cause also negates Staten's retaliation claims against Lowman and Thompson – claims that are "only applicable 'when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

That is, "even where a citizen believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Id.* at 244-45 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th

Cir. 2017) ("[I]f an officer has probable cause to seize that individual, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" (citation omitted)).

### B.    Use of Excessive Force

"To prevail on a Section 1983 excessive force claim, 'a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting, in turn, *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)); citing *Graham v. Connor*, 490 U.S. 386, 393-97 (1989)).

> Accidental contact between an officer and a civilian is not a Fourth Amendment seizure – even if it injures the civilian – so a § 1983 plaintiff claiming excessive force must show that force was applied intentionally. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (explaining that a seizure occurs only when a suspect's "freedom of movement" is terminated "through means intentionally applied" by the governmental actor); *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (holding there can be no § 1983 liability for excessive force "in the absence of intentional conduct"). And even if the seizure involves intentional conduct, the district court must consider whether it was unreasonable under the specific circumstances of the seizure. *See, e.g.*, *Emmons*, 139 S. Ct. at 503-04 (reversing the denial of qualified immunity where officers threw a man to the ground during an arrest).

*McDonald v. McClelland*, 779 F. App'x 222, 225-26 (5th Cir. 2019) (per curiam) (citation modified).

> In excessive-force claims under the Fourth Amendment, the reasonableness of an official's conduct depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The court must adopt "the perspective of a reasonable officer on the scene,

rather than [judge] with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

*Brothers*, 837 F.3d at 518-19 (footnote omitted).

Starting with Nguyen, Staten's version of the use of force supported by the evidence (his declaration) is "blatantly contradicted by the record" (footage from Nguyen's body camera [Dkt. No. 53, Exs. 1-A, 1-B, 1-C]). *Scott*, 550 U.S. at 380.

As set out above, Staten has declared under penalty of perjury that the video evidence is incomplete in that it did not capture a struggle between Nguyen and him that plausibly occurred after Staten pushed Nguyen off/Staten pulled away from Nguyen, during which Nguyen placed Staten in an arm lock and attempting to force Staten to the ground. *See* Dkt. No. 67-1, ¶¶ 2-4. But the video evidence refutes these declarations. After the brief encounter between Nguyen and Staten, *see* Dkt. No. 53, Exs. 1-A at 3:15-4:05, Staten walks away from Nguyen, and the video seamlessly shows Nguyen continuing to interact with others at the scene but never again with Staten, *see id.* at 4:06-12:49; *see also* Dkt. No. 53, Exs. 1-B, 1-C.

Further, even if the Court were to accept the version of events in Staten's declaration, the brief facts set out therein – that there was a struggle in which Nguyen placed Staten in an arm lock and forced him to the ground – do not provide enough context to show that this off-camera use of force was unreasonably excessive.

*See Graham*, 490 U.S. at 397 ("[T]he 'reasonableness' inquiry in an excessive force case is … whether [an officer's] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (citations omitted)).

 Turning to the next day, April 20, when Staten was arrested, Staten's version of events depicted by his declaration is that the video showing his arrest by Lowman "does not show how tight the handcuffs were on" him; that "[t]he handcuffs were cutting into [his] wrist bones"; that, "when [he] was put into the police car[, he] was sitting with the [his] hands cuffed behind [his] back in a very uncomfortable position"; and that the video further fails to show either "how long [he] had to remain in the car before [they] left, which felt like hours," or "Officer Lowman coming to the car and telling [Staten] that he knows about my issues with the police and my prior IAD complaints," or Staten "requesting from the Officers that [his] handcuffs be loosened or removed, and them refusing." Dkt. No. 67-1, ¶¶ 10-13.

But these declarations, accepted as true, do not show force that was excessive in violation of the Fourth Amendment, the first element of which is an injury. *See Shepherd*, 920 F.3d at 283; *Harris*, 745 F.3d at 772; *Ramirez*, 542 F.3d at 128; *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

"Although a showing of significant injury is no longer required in the context of an excessive force claim, [courts in this circuit] do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (cleaned up). And "the 'injury must be more

than a de minimis injury and must be evaluated in the context in which the force was deployed.'" *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (quoting *Glenn*, 242 F.3d at 314).

So, under these standards, "'handcuffing too tightly, without more, does not amount to excessive force.'" *Lockett*, 607 F.3d at 999 (quoting *Glenn*, 242 F.3d at 314); *see also Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (rejecting excessive force claims based on that the plaintiff "suffered bruising on her wrists and arms because the handcuffs were applied too tightly when she was arrested" and that "the deputies [left her] in the patrol car for, as she alleges, 30 to 45 minutes").

Staten provides no evidence to show that Thompson used excessive force or even had physical contact with him. *See Meadours*, 483 F.3d at 421-22 (a court must consider each official's individual actions).

And, relatedly, Staten only alleges that his security footage was erased, leaving this allegation out of his declaration, *see* Dkt. No. 67-1, while Thompson declares under penalty of perjury that "[n]o video footage from Mr. Staten's surveillance cameras was altered or deleted by DPD personnel," Dkt. No. 53-1 at 19.

II. **Even if Staten has shown a violation of a constitutional right, he has failed to show that a right at issue was clearly established at the time of the alleged misconduct.**

For the reasons above, the Court should grant the motion for summary judgment as to all Officer Defendants on qualified immunity's first prong, as Staten has not pointed to summary judgment evidence showing that, when the facts are viewed in the light most favorable to him, either Nguyen, Lowman, or Thompson violated his federal or statutory rights.

But, if the Court were to find that Staten has made this showing as to any claim against any officer, Staten has not carried his burden as to qualified immunity's independent second prong.

And the Officer Defendants are entitled to qualified immunity for this reason alone. *See, e.g.*, *Batyukova*, 994 F.3d at 722-26 ("An officer is entitled to qualified immunity if the officer's conduct either did not violate a federal right of the plaintiff or that right was not clearly established at the time of the relevant events. [A court] can base a decision to allow the immunity on either part of the analysis alone." (citations omitted)).

First, as the walkthrough the record above demonstrates, even if the Court were to find that Staten has shown a constitutional violation, the record evidence viewed in the light most favorable to him still fails to show that this case presents "'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 2021 WL 2767581, at *4; *see, e.g.*, *Joseph*, 981 F.3d at 337-38 (setting out examples of extreme cases in which the Fifth Circuit found an obvious constitutional violation, such as "that it was obviously unconstitutional for an officer to shoot – without warning, despite an opportunity to warn – a suspect who was pointing a gun to his own head and did not know the officer was there").

And, because Staten has not carried the admittedly "sky high" burden to show that analogous case law is not necessary, *Joseph*, 981 F.3d at 338, he may only rebut qualified immunity's second prong by identifying a case or body of relevant case law in which a public official under circumstances similar to those here was found to have

violated the Constitution.

But Staten has not identified any "[p]recedent involving similar facts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam). He instead chose to argue that critical fact issues alone should prevent each officer from summary judgment on the qualified immunity defense. *See* Dkt. No. 66 at 17-25.

This argument fails to address the concerns underlying prong two: that "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela*, 138 S. Ct. at 1153 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)). This "necessary part of the qualified-immunity standard," *id.* – this "'[s]pecificity'" – "'is especially important in the Fourth Amendment context,'" *id.* at 1152 (quoting *Mullenix*, 577 U.S. at 12).

So, by not identifying a case or body of relevant case law in which a public official under circumstances similar to those here was found to have violated the Constitution, Staten has not shown that "a right is clearly established as to the specific facts of [this] case." *Vincent*, 805 F.3d at 547.

Summing up, outside the extreme case presenting an obvious constitutional violation, "reliance on broad pronouncements from [prior decisions] evinces a methodological error: It define[s] clearly established law too generally for any controlling relevance in [the] case" before the court. *Cunningham*, 983 F.3d at 193.

Applied here, then, it is not enough to argue that police may not briefly detain citizens absent reasonable suspicion, or that police must have probable cause to

arrest, or that citizens may not be detained or arrested in retaliation, or that the use of force must not be excessive. "Courts must [instead] 'frame [each] constitutional question with specificity and granularity.'" *Id.* (quoting *Morrow*, 917 F.3d at 874-75). So "'[t]he dispositive question'" becomes "whether 'the violative nature of particular conduct is clearly established.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12).

And, because Staten has not carried this burden to as to any claim against any officer, the Court should grant the Officer Defendants summary judgment on qualified immunity under prong two alone.

## Recommendation

The Court should grant the motion for summary judgment on qualified immunity filed by Defendants Officer Ryan Lowman, Officer Tu Nguyen, and Detective Jerry Thompson [Dkt. No. 51] and dismiss the claims against these defendants with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 21, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE